UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COLUMBUS PARK NURSING AND REHABILITATION CENTER, | ) ) ) | 10 C 4317 |
| Plaintiff, | ) ) | |
| | ) | Judge Feinerman |
| vs. | ) ) | |
| KATHLEEN SEBELIUS in her official capacity as Secretary of the United States Department of Health and Human Services, | ) ) ) ) ) | |
| Defendant. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Columbus Park Nursing and Rehabilitation Center, which participates as a healthcare provider in the Medicare and Medicaid programs, filed this suit against the Secretary of the Department of Health and Human Services ("HHS") in her official capacity. Doc. 1. The suit alleges that the Secretary violated Columbus Park's Fifth Amendment due process rights by affording it insufficient process to challenge a determination that it was not in "substantial compliance" with the requirements of the Medicare and Medicaid programs. The Secretary filed a motion to dismiss the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for summary judgment under Rule 56. Doc. 18. The court directed the parties to brief only the threshold jurisdictional issue, Doc. 22, and they did so, Docs. 23, 24. After reviewing the jurisdictional briefs, the court stated that it was "inclined to believe that jurisdiction lies over" this suit, Doc. 25, and so it allowed the parties to engage in discovery and ordered them to brief the summary judgment component of the Secretary's motion, Docs. 25-27, and they did so, Docs. 28, 32. While the Secretary's motion was pending, Columbus Park filed its own cross-motion for summary judgment. Doc. 62. Upon further

consideration, the court has concluded that it lacks subject matter jurisdiction over this suit. Accordingly, the Secretary's motion to dismiss for lack of jurisdiction is granted and the parties' cross-motions for summary judgment are denied as moot.

**Background**

In urging dismissal for lack of jurisdiction, the Secretary does not dispute the complaint's factual allegations or seek to introduce her own evidence. Accordingly, in considering the motion to dismiss, the court will assume the truth of the complaint's factual allegations, though not its legal conclusions. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("In the context of facial challenges [to the court's subject matter jurisdiction], … the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion."). The court may also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Columbus Park's brief opposing dismissal, so long as those facts are "consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Columbus Park as the complaint and the other materials to be considered on a Rule 12(b)(1) motion allow.

Columbus Park is a skilled nursing facility located in Chicago. Doc. 1 at ¶ 18. At all relevant times, it held a license from the Illinois Department of Public Health ("IDPH") to provide skilled nursing care and has been certified to participate in the Medicare and Medicaid programs. *Ibid*. HHS is charged with overseeing the federal Medicare and Medicaid programs, and has delegated that responsibility to an HHS division called the Centers for Medicare and Medicaid Services ("CMS"). *Id*. at ¶ 19. CMS has in turn contracted with IDPH to act as its

agent and survey Illinois long-term care facilities to ensure that they comply with federal requirements for participation in Medicare and Medicaid. *Ibid*.

Acting pursuant to that duty, IDPH conducted a survey of Columbus Park on July 20, 2009. *Id*. at ¶¶ 2, 28. Finding that Columbus Park was not in "substantial compliance" with Medicare and Medicaid requirements, IDPH cited Columbus Park for a "G" level deficiency, indicating that it had uncovered an isolated incident of actual harm to a resident that did not create immediate jeopardy. *Id*. at ¶¶ 28-29. IDPH informed Columbus Park that it was proposing—but not yet actually implementing—remedies for the deficiency: directed in-service training for Columbus Park staff, and a $200 daily fine until the deficiency was remedied. *Id*. at ¶ 30. Columbus Park denied and continues to deny IDPH's finding, which it attributes to a deficient investigation on IDPH's part. *Id*. at ¶¶ 31-32.

On August 3, Columbus Park requested informal dispute resolution ("IDR") through the Michigan Peer Review Organization ("MPRO"). *Id*. at ¶ 6. The IDR process "is not an evidentiary hearing; it is an informal exchange of information between the facility and the Department or designated outside entity to determine whether or not a deficiency existed at the time of the survey." *Id*. at ¶ 7; *see* Doc. 1-3 (Notice of Availability of Informal Dispute Resolution). MPRO declined to recommend that the deficiency finding be modified. Doc. 1 at ¶ 6.

Columbus Park at some point submitted a "Plan of Correction" as required by 42 C.F.R. § 488.408(f), which provides that "each facility that has a deficiency with regard to a requirement for long term care facilities must submit a plan of correction for approval by CMS or the State, regardless of—(i) which remedies are imposed; or (ii) the seriousness of the deficiencies." Doc. 23 at 3. On September 21, Columbus Park requested a hearing with CMS to

3

challenge the deficiency finding. Doc. 1 at ¶ 8. The case was assigned to an administrative law judge ("ALJ"). *Id*. at ¶ 9. On October 5, CMS notified Columbus Park that a subsequent survey of the facility conducted in early August had found it to be in substantial compliance and that the proposed remedies would therefore not be implemented. *Id*. at ¶ 10.

Although CMS did not seek to fine Columbus Park or to suspend it from participating in Medicare or Medicaid, the July 2009 adverse finding was not nullified. *Id*. at ¶ 11. In other words, although CMS declined to impose any "enforcement remedies" on Columbus Park, the "G" level deficiency finding continued to exist and to affect Columbus Park. *Id*. at ¶ 33. The deficiency finding became part of a public record and was posted to an online database maintained by the federal government to allow the public to compare Medicare certified facilities. *Id*. at ¶¶ 34-35. The website does not reflect Columbus Park's position that the deficiency finding was groundless from the start. *Id*. at ¶ 36. The deficiency finding makes Columbus Park less attractive to current and potential patients and their families than it otherwise would be, and the resultant reduction in demand has had a negative financial effect on Columbus Park. *Id*. at ¶¶ 37-38. Also as a result of the deficiency finding, the Medicare "rating" for Columbus Park is only one star out of a possible five, which has a further detrimental effect on Columbus Park's ability to attract patients. *Id*. at ¶¶ 40-42.

Moreover, CMS policy provides that "[f]acilities having deficiencies of actual harm (level 'G' or above) on the current survey as well as having deficiencies of actual harm or above on the previous standard survey" shall have no opportunity to correct alleged violations if another deficiency finding is made. *Id*. at ¶ 47. Accordingly, although absent the July 2009 deficiency finding Columbus Park would have been afforded the opportunity to correct any newly alleged deficiency before any enforcement remedies would be imposed, the July 2009

finding meant that Columbus Park would not receive that opportunity with respect to future deficiency findings—even though CMS had ultimately declined to impose any formal enforcement remedies on Columbus Park for the July 2009 deficiency. *Id.* at ¶¶ 45, 48-49. Indeed, in October 2009, CMS cited Columbus Park for additional deficiencies after another survey. *Id.* at ¶ 44. In keeping with the policy just described, the remedies sought for the October deficiency finding included the immediate imposition of a $300 daily fine. *Id.* at ¶ 46.

Columbus Park viewed the July 2009 deficiency finding as groundless and did not want to suffer the consequences—indefinite publication of the deficiency finding, and the loss of its opportunity to correct future deficiency findings before enforcement remedies would be imposed—and so it sought to continue with its challenge to that finding before the ALJ even after learning that no formal enforcement remedies would to be imposed. *Id.* at ¶¶ 11, 13. But CMS moved to dismiss the challenge, and the ALJ granted the motion on the ground that Columbus Park had no right to a hearing in light of CMS's decision not to impose any formal enforcement remedy. *Id.* at ¶ 14; Doc. 1-6 (CMS's motion to dismiss); Doc. 1-7 (Columbus Park's opposition to CMS's motion to dismiss); Doc. 1-8 (the ALJ's opinion). Columbus Park appealed to the Departmental Appeals Board, Docs. 1-9, 1-10, 1-11, which affirmed the dismissal. Doc. 1 at ¶¶ 15-17; Doc. 1-12 (the Board's opinion). Relying on 42 C.F.R. § 498.3, which provides for appeal in some scenarios but not in others, the Board explained that "[a]pplying the plain language of the regulations, the Board has long held that a [skilled nursing facility] has no right to an ALJ hearing to contest survey deficiency findings where CMS has not imposed any of the remedies specified at [42 C.F.R. §] 488.406 based on those findings, or where CMS imposed, but subsequently rescinded, any such remedies." Doc. 1-12 at 6.

## Discussion

Columbus Park then filed this lawsuit against the Secretary in federal district court, premising jurisdiction on the general federal question statute, 28 U.S.C. § 1331. Doc. 1 at ¶ 20. The complaint presents a single claim: that the Secretary's refusal to allow Columbus Park a hearing to challenge the July 2009 deficiency finding, combined with the continuing negative effects of that finding, amounts to a deprivation without due process of its interests in its reputation, in future income from potential patients who might be deterred by the publicized deficiency finding, and in being afforded a chance to correct future deficiencies rather than having enforcement remedies imposed immediately. *Id*. at ¶¶ 52-62. As a remedy, Columbus Park seeks a declaratory judgment that HHS's refusal to grant it a hearing violates due process and an injunction requiring HHS to allow such a hearing to go forward. *Id*. at p. 13. In other words, Columbus Park's suit is limited to the constitutional claim that the HHS regulations depriving it of a hearing are unconstitutional as applied to its circumstances. Columbus Park does not argue that the regulations reflect an impermissible interpretation of the governing statute under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or that the Secretary's interpretation of the regulations as they apply to this case is impermissible under *Auer v. Robbins*, 519 U.S. 452 (1997). On the merits, the Secretary contends that Columbus Park has no constitutionally protected interest in a reputation unmarred by the publicized deficiency finding or in maintaining the opportunity to fix future deficiencies before remedies are imposed, and that even if Columbus Park did have such an interest, the IDR process, which is available regardless of whether a formal enforcement remedy is imposed, provided all the process that the Constitution requires for the deprivation of that interest.

The Secretary's merits arguments are not without force. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' Only after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (citations omitted). Columbus Park points to three supposed deprivations: the decreased demand for its services due to the Internet publication of the deficiency finding and the low one-star facility rating, the loss of the opportunity to make corrections before enforcement remedies would be imposed in response to future deficiency findings, and the enhancement of future remedies in light of the July 2009 deficiency finding.

As for Columbus Park's contention that the published deficiency finding and one-star facility rating wrongfully harmed it by reducing demand for its services, "[t]he Supreme Court has made it clear that defamation alone, even by a state actor, does not violate the Due Process Clause." *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). "To avoid constitutionalizing state defamation law, defamation by a government actor does not implicate the Due Process Clause unless 'a right or status previously recognized by … law was distinctly altered or extinguished' as a result." *Ibid*. (quoting *Paul*, 424 U.S. at 711). "To avoid this problem, a plaintiff must allege that '(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure.'" *Ibid*. (quoting *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001)). Most importantly for Columbus Park's purposes, the bar for "tangible loss of other employment opportunities" is very high: the plaintiff "must allege that his 'good name, reputation, honor or integrity was called into question in a manner that makes it *virtually impossible for him to find new employment in his*

7

*chosen field.*'" *Ibid*. (quoting *Townsend*, 256 F.3d at 670) (emphasis added, brackets omitted). Thus, if the plaintiff still works in his chosen field, he cannot show a tangible loss of employment opportunities. *See Abcarian*, 617 F.3d at 941 ("Abcarian cannot meet this burden for a simple and benign reason: he still has his job in his chosen profession!"); *Trejo v. Shoben*, 319 F.3d 878, 889 (7th Cir. 2003); *Townsend*, 256 F.3d at 670. Where the plaintiff is a business rather than an individual, courts apply an analogous standard and require the business to show that it has suffered "broad preclusion" from its chosen field, meaning that "the government has seriously affected, if not destroyed, [its] ability to obtain employment or contracts in [its] field." *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003); *see Chicago United Indus., Ltd. v. City of Chicago*, 669 F.3d 847, 850-51 (7th Cir. 2012) (applying the *Trifax* standard). For example, a government report critical of a company's performance does not implicate the Due Process Clause, despite its adverse effect on demand for the company's services, so long as the company is still able to bid successfully on government contracts. *See Trifax*, 314 F.3d at 644-45.

It is unlikely that the harm to Columbus Park's reputation created by the Internet publication of the July 2009 deficiency finding and its lower star rating could satisfy the applicable standard. The complaint concedes that Columbus Park continues to operate and is still certified to participate in the Medicare and Medicaid programs. Doc. 1 at ¶ 18. Indeed, Columbus Park admits that it "has no way of knowing who viewed the website, and will never be able to assess how many individuals were dissuaded from coming to, sending their family members to, or referring clients to Columbus Park." Doc. 28 at 9. These concessions damage Columbus Park's theory, as "[a constitutionally protected] interest is not implicated where the charges merely result in reduced economic returns and diminished prestige, but not permanent

exclusion from or protracted interruption of employment." *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985); *see also Chicago United Indus., Ltd.*, 669 F.3d at 851 (rejecting a business's due process challenge on the ground that "diminution is not destruction, and diminution is all the company has shown"); *Abcarian*, 617 F.3d at 941-42 ("One simply cannot have been denied his liberty to pursue a particular occupation when he admittedly continues to hold a job—the same job—in that very occupation.").

Nor is it likely that Columbus Park has a constitutionally protected interest in the entitlement to correct deficiencies before any remedy is imposed for a future violation. "To have a property interest in a benefit, a person must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Ibid*. "A property interest of constitutional magnitude exists only when the [government's] discretion is 'clearly limited' such that the plaintiff cannot be denied the interest 'unless specific conditions are met.'" *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Brown v. City of Michigan City*, 462 F.3d 720, 729 (2006)). Put simply, the plaintiff must show that "if certain substantive predicates are met, a particular outcome necessarily follows." *Ibid*.; *see Kim Constr. Co. v. Bd. of Trs. of Vill. of Mundelein*, 14 F.3d 1243, 1247 (7th Cir. 1994) (adopting in the property interest context the Supreme Court's rule that, for a constitutionally protected liberty interest to be created, "a state regulation must contain specific directives to the decisionmaker such that if the regulation's 'substantive predicates' are met, a particular outcome necessarily follows"). Most importantly for this case, a property interest is *not* created by

statutes or regulations that merely identify relevant factors bearing on a government official's exercise of discretion. *See Talley v. Lane*, 13 F.3d 1031, 1035 (7th Cir. 1994) ("Although the statute and regulations suggested relevant information, the final decision was left to the landlord's discretion."); *see also Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 464-65 (1989) (regulations that merely provided some guidance on when prison visitors would be allowed did not create a liberty interest).

Columbus Park contends that CMS's State Operations Manual creates a property interest in the opportunity to correct deficiencies before being subjected to enforcement remedies. That contention is incorrect. The Manual states: "An opportunity to correct deficiencies before remedies are imposed is not assured. The government has no obligation to give a facility an opportunity to correct deficiencies prior to imposing remedies, and must only meet the minimum notice requirements that are applicable to the imposition of remedies." *State Operations Manual* § 7304. It follows under the foregoing precedents that Columbus Park likely has no constitutionally protected property interest in the opportunity to correct deficiencies before remedies are imposed. True, the Manual *prohibits* those facilities "having deficiencies of actual harm or above (level G or above) on the current survey as well as having deficiencies of actual harm or above on the previous standard survey" from receiving an opportunity to correct. *Id.* § 7304.2.1; Doc. 1-15 at 1. But the truth of one proposition does not imply the truth of its converse. A limitation on discretion in one instance, where a facility has had a prior deficiency finding, does not limit discretion in the opposite instance, where the facility has not had such a finding. Thus, a facility that has not had a valid deficiency finding of level "G" or above has no constitutionally protected entitlement to an opportunity to correct, and so it is doubtful that any constitutionally protected interest was taken from Columbus Park by the unreviewable July 2009

deficiency finding. *See Cromwell v. City of Momence*, __ F.3d __, No. 12-1541, slip op. at 6-9 (7th Cir. Apr. 12, 2013) (holding that a regulation stating that probationary employees may "be fired for any reason" does not imply that "*non*probationary officers have tenure and thus may be terminated only for cause" so as to create a constitutionally protected property interest in employment for nonprobationary officers); *Brown*, 462 F.3d at 729 (holding that a city's prohibition on a resident's access to a park did not implicate a protected due process interest because no law guaranteed access to the park).

The same reasoning applies to the enhancement of future remedies that Columbus Park may be subjected to because of the July 2009 deficiency finding, for the government retains complete discretion to impose remedies regardless of a facility's prior record. The applicable regulation provides that when "choosing a remedy within a remedy category" (the category having been determined by the severity of the present deficiency), the government "may consider other factors [than the present deficiency's severity], which may include, but are not limited to the following: … (2) The facility's prior history of noncompliance in general and specifically with reference to the cited deficiencies." 42 C.F.R. § 488.404(c). Thus, the existence or nonexistence of a prior deficiency finding does not bind the government in any way; it is merely one factor to be weighed as the government, in its discretion, thinks most appropriate, and so it is unlikely to create a constitutionally protected interest. *See Talley*, 13 F.3d at 1035. Furthermore, the Departmental Appeals Board made clear that if Columbus Park receives an enhanced penalty, it will be entitled at that point to challenge any previously unreviewable deficiency findings that were used to enhance that penalty. Doc. 1-12 at 22; *see Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 9 (2000) ("*Illinois Council*") ("Nor do the regulations cause providers to

suffer more severe penalties in later enforcement actions based on findings that are unreviewable.") (internal quotation marks omitted).

Even if the interests claimed by Columbus Park were protected by the Due Process Clause, the question would remain whether the process afforded by HHS is constitutionally sufficient. The Secretary permits facilities to go through the IDR process regardless of whether enforcement remedies are imposed, and that may well be all the process required by the Constitution for what are, at most, very minor deprivations. *See Ivy Hall Geriatric & Rehab. Ctr., Inc. v. Shalala*, 50 F. Supp. 2d 447 (D. Md. 1999) (holding that that IDR provides sufficient process for similarly minor deprivations imposed on nursing homes). The court observes also that, were it to perform the three-factor balancing test used to determine what process is due, it would consider "the Government's interest [in not providing any more process than it already permits], including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The government's interest in not being required to hold an evidentiary hearing after every deficiency finding is weighty. In 1993, there were over 15,000 nursing facilities participating in Medicare and Medicaid. Doc. 24 at 5 n.3 (citing 59 Fed. Reg. 56116, 56229 (Nov. 10, 1994)). Each facility must be surveyed at least once every 15 months, amounting to many thousands of surveys each year. *See* 42 C.F.R. § 488.308. And of these thousands of surveys, many uncover deficiencies; in 1992, only 7.3 percent of the homes surveyed were found to be deficiency free. Doc. 25 at 5 (citing 59 Fed. Reg. at 56153). Government resources would be badly strained if every deficiency finding led to a full evidentiary hearing that had to be attended by the surveyors. *See Ivy Hall*, 50 F. Supp. 2d at 459; *Del Rosa Villa, Inc. v. Shalala*, 1997 WL 269487, at *6 (C.D. Cal. Mar. 5, 1997). The result would be a substantial burden on

the government's interest in protecting nursing home residents.  Very likely, then, even if Columbus Park did have the constitutionally protected interests it claims to possess, the government's interests would justify it in offering only the IDR process where no formal enforcement remedies are imposed.

Although the court doubts that Columbus Park could succeed on the merits of its due process claim, a ruling to that effect is not necessary and in fact is prohibited, because the court lacks subject matter jurisdiction over this case.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998); *Leibovitch v. Islamic Republic of Iran*, 697 F.3d 561, 572-73 (7th Cir. 2012) (same).  "[T]he party invoking federal jurisdiction bears the burden of establishing its existence," *Steel Co.*, 523 U.S. at 104, and "[t]he court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists," *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012).  The court agrees with the Secretary that the court lacks jurisdiction and that the case must be dismissed on that ground.

As noted above, Columbus Park stakes federal jurisdiction on 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Section 1331 gives the court jurisdiction over Columbus Park's claim, which arises under the Constitution, unless some other statute precludes the court from exercising jurisdiction.  *See Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2141 (2012) ("Congress may remove certain claims from the general jurisdiction of the federal courts in order to channel these claims into a system of statutory review."); *Michael Reese Hosp. & Med. Ctr. v. Thompson*, 427 F.3d 436, 440-41 (7th Cir. 2005).

By operation of several interrelated provisions, the Medicare Act generally prohibits judicial review of claims arising under the Act unless they meet certain requirements. First, the Social Security Act states:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision by the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*

42 U.S.C. § 405(h) (emphasis added). Next, 42 U.S.C. § 1395ii "makes § 405(h) applicable to the Medicare Act 'to the same extent as' it applies to the Social Security Act," *Illinois Council*, 529 U.S. at 9, and provides that "any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively," 42 U.S.C. § 1395ii.

"Section 405(h) purports to make exclusive the judicial review method set forth in § 405(g)." *Illinois Council*, 529 U.S. at 10. Section 405(g), titled "Judicial review," provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party … may obtain a review of such decision by a civil action" in federal district court. 42 U.S.C. § 405(g). Together, §§ 405(g) and 405(h) create a "channeling" requirement: a party who wishes to bring a claim "arising under" the Medicare Act must begin by presenting that claim to HHS and may seek judicial review only from a final decision made by the Secretary after a hearing. As the Supreme Court has explained:

> [I]nsofar as it demands the 'channeling' of virtually all legal attacks through the agency, [§ 405(h)] assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts …. But this assurance comes at a price, namely, occasional individual, delay-related hardship. In the context of

> a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified. In any event, such was the judgment of Congress as understood in [*Weinberger v.*] *Salfi*[, 422 U.S. 749 (1975),] and [*Heckler v.*] *Ringer*[, 466 U.S. 602 (1984)].

*Illinois Council*, 529 U.S. at 13.

The parties agree that this suit arises under the Medicare Act, but they dispute whether § 405(h) deprives the court of jurisdiction. Columbus Park contends that the suit falls within an exception to § 405(h) created by *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). As authoritatively interpreted by the Supreme Court in *Illinois Council*, *Michigan Academy* held "that § 1395ii does not apply § 405(h) [to claims arising under the Medicare Act] where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 19. In other words, a party may file a claim arising under the Medicare Act in federal court under § 1331, notwithstanding the bar created by § 405(h), where the party otherwise would be unable to obtain review anywhere by any means; this interpretation of § 1395ii is consistent "with the distinction that [the Supreme] Court has often drawn between a total preclusion of review and a postponement of review." *Illinois Council*, 529 U.S. at 19. Columbus Park argues that this is just such a case: it wanted to challenge the July 2009 deficiency finding, but HHS refused to hear the challenge on the ground that no formal enforcement remedy had been imposed, and so if this court lacks jurisdiction over the case, Columbus Park will be left with no way to challenge an allegedly unconstitutional deprivation. Therefore, Columbus Park says, § 405(h) does not apply and the court has jurisdiction under § 1331.

The Secretary responds that Columbus Park *did* have a route by which it could have obtained review of the July 2009 deficiency finding even after CMS declined to impose any

15

formal enforcement remedy: Columbus Park could have refused to submit a Plan of Correction in response to the finding, in which case the proposed remedies would have been imposed, which would in turn have entitled Columbus Park to challenge the finding through a full evidentiary hearing, culminating in judicial review under § 405(g). Doc. 19 at 15 n.6; Doc. 24 at 8. The Secretary is correct. Because Columbus Park could have obtained judicial review by following that route, this is not a situation "where application of § 405(h) would not simply channel review through the agency, but would mean no review at all," *Illinois Council*, 529 U.S. at 19, and thus this is not a situation where the *Michigan Academy* exception to § 405(h) allows for review under § 1331.

*Illinois Council* is instructive on this point, as Columbus Park's position is much like that of the plaintiff in that case, the Illinois Council on Long Term Care, Inc. ("Council"). Seeking to challenge certain Medicare-related regulations, the Council brought suit in federal court under § 1331 rather than following the special Medicare review route, which would have consisted of a hearing before the agency followed by judicial review under § 405(g). *See Illinois Council*, 529 U.S. at 7-8. The Supreme Court held that § 405(h) barred the federal courts from exercising jurisdiction over the lawsuit. *Id*. at 5. The Supreme Court's discussion of the Council's reading of *Michigan Academy* applies with equal force to Columbus Park's reading of that precedent:

> The Council next argues that the [HHS] regulations, as implemented by the enforcement agencies, deny review in practice by (1) insisting that a nursing home with deficiencies present a corrective plan, (2) imposing no further sanction or remedy if it does so, but (3) threatening termination if it does not. See 42 CFR §§ 488.402(d), 488.456(b)(ii) (1998). Because a home cannot risk termination, the Council adds, it must always submit a plan, thereby avoiding imposition of a remedy, but simultaneously losing its opportunity to contest the lawfulness of any remedy-related rules or regulations. See § 498.3(b)(12). And, the Council's *amici* assert, compliance actually harms the home by subjecting it to increased sanctions later on by virtue of the unreviewed deficiency findings, and because the agency makes deficiency findings public on the Internet, § 488.325.

16

> The short, conclusive answer to these contentions is that the Secretary denies any such practice. She states in her brief that a nursing home with deficiencies can test the lawfulness of her regulations simply by refusing to submit a plan and incurring a minor penalty. Minor penalties, she says, are the norm, for "terminations from the program are rare and generally reserved for the most egregious recidivist institutions." (HHS reports that only 25 out of more than 13,000 nursing homes were terminated in 1995-1996.) She adds that the "remedy imposed on a facility that fails to submit a Plan of Correction or to correct a deficiency—and appeals the deficiency—is no different than the remedy the Secretary ordinarily would impose in the first instance." Nor do the regulations "cause providers to suffer more severe penalties in later enforcement actions based on findings that are unreviewable." The Secretary concedes that a home's deficiencies are posted on the Internet, but she notes that a home can post a reply.
>
> The Council gives us no convincing reason to doubt the Secretary's description of the agency's general practice. We therefore need not decide whether a general practice that forced nursing homes to abandon legitimate challenges to agency regulations could amount to the "practical equivalent of a total denial of judicial review."

*Id*. at 21-22 (some citations omitted).

Even if some specifics of HHS's practice regarding deficiency findings not accompanied by formal enforcement remedies may have changed since *Illinois Council* was decided in 2000, it is clear that Columbus Park could have obtained review of the July 2009 deficiency finding by refusing to submit a Plan of Correction, and it also is clear that, in the Supreme Court's view, that route is not so onerous or illusory as to constitute "a general practice that force[s] nursing homes to abandon legitimate challenges." Thus, this suit does not fall within the *Michigan Academy* exception to § 405(h) because Columbus Park had another route by which to obtain review of the July 2009 deficiency finding. It follows that § 405(h) deprives the court of jurisdiction over Columbus Park's suit. *See Del Rosa Villa, Inc.*, 1997 WL 269487, at *7 (rejecting a plaintiff's *Michigan Academy* argument on the ground that it could have obtained

review of a survey that resulted in a deficiency finding by "refusing to comply and accepting an enforcement action").

Columbus Park argues in the alternative that the court has jurisdiction under § 405(g) because it presented its arguments before both the ALJ and the Departmental Appeals Board. Doc. 23 at 11-15. Columbus Park does not deny that the ALJ and the Board correctly determined that they were without jurisdiction to hear its challenge to the July 2009 deficiency finding in the absence of any formal enforcement remedy. Columbus Park merely argues that, having sought to press its claim before them, it has done all that is required to obtain judicial review pursuant to § 405(g), which provides in relevant part that "[a]ny individual, after any final decision of the [Secretary of HHS] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision." The Secretary responds that Columbus Park never received a "final decision … made *after a hearing*" because the ALJ and the Board conducted no hearings; they merely concluded that they lacked jurisdiction to do so and dismissed the action. Doc. 24 at 11-15.

The Secretary is correct. In *Califano v. Sanders*, 430 U.S. 99 (1977), the plaintiff attempted to obtain judicial review under § 405(g) of the Social Security Administration's ("SSA") denial of his request to reopen his Social Security claim pursuant to a regulation that allowed "for reopening of the agency determination within specified time limits after the date of initial determination." *Id*. at 102. In seeking judicial review of the denial, the plaintiff argued that the SSA had abused its discretion by refusing to reopen his case. *Id*. at 103. The Supreme Court held that judicial review was not permitted. The Court explained that § 405(g) "clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary

made after a hearing.' But a petition to reopen a prior final decision may be denied without a hearing as provided in … 42 U.S.C. § 405(b)." 430 U.S. at 108. Columbus Park is similarly situated to the *Sanders* plaintiff in that no hearing was held on its challenge to the July 2009 deficiency finding.

*Sanders* acknowledged that *Weinberger v. Salfi*, *supra*, and *Mathews v. Eldridge*, *supra*, allowed judicial review under § 405(g) even in the absence of an agency hearing where the plaintiff made constitutional arguments that were not cognizable by the agency, in keeping with "the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence." 430 U.S. at 109. Although Columbus Park is pressing a constitutional claim, *Salfi* and *Mathews* are inapposite here because, as explained above, Columbus Park could have obtained judicial review by refusing to submit a Plan of Correction and then challenging the ensuing enforcement remedies. That is, because that route to judicial review existed, this case does not present the specter of "foreclosing jurisdiction" to review a constitutional claim. Moreover, *Illinois Council* would not have explained that the Council could have obtained judicial review through that somewhat onerous and roundabout route if the Council could equally well have obtained such review simply by filing its challenge with HHS, having it dismissed for lack of jurisdiction, and then appealing the dismissal to federal court. In a similar case, a district court held that the predicate for judicial review under § 405(g)—"any final decision … made after a hearing"—was absent where the agency had dismissed for lack of jurisdiction the plaintiff's challenge to a deficiency finding for which no enforcement remedy was imposed. *See Del Rosa Villa*, 1997 WL 269487, at *5 ("Federal Defendants are correct that

a 'determination' cannot occur without imposition of a 'remedy' specified at 42 C.F.R. § 488.406. They are also correct that thereafter the 'exclusive means of obtaining judicial review' is an action brought in accordance with 42 U.S.C. § 405(g). The Court finds that Plaintiff has not received a … 'final decision' within the meaning of § 405(g)."). That decision is correct.

For these reasons, § 405(h) deprives the court of jurisdiction over this case. Of course, were § 405(h) itself unconstitutional as applied to this case, it would have no effect and could not deprive this court of the jurisdiction it otherwise would have under § 1331 to hear Columbus Park's due process claim. *Cf. Boumediene v. Bush*, 553 U.S. 723 (2008) (holding that a federal statute depriving federal courts of jurisdiction to hear certain habeas petitions was unconstitutional and that the courts must therefore hear the petitions). But Columbus Park does not challenge the constitutionality of § 405(h) as applied to this case, and nor would such a challenge be likely to succeed in light of *Illinois Council*.

## Conclusion

The case is dismissed for want of subject matter jurisdiction, and the pending cross-motions for summary judgment are denied as moot.

April 12, 2013

United States District Judge